**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | | |
|---|---|---|
| LISA R.,[1] | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Civil No. 3:25-cv-423-SLS |
| FRANK BISIGNANO, Commissioner of Social Security, | ) | |
| *Defendant*. | ) | |

**MEMORANDUM OPINION**

In this action, Plaintiff Lisa R. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny her Title II application for disability insurance benefits. This matter comes before the Court on cross-motions for summary judgment, which have been fully briefed, making this matter ripe for review. (ECF Nos. 10, 11, 14.) The Court exercises jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (ECF Nos. 3, 16, 17) and pursuant to 42 U.S.C. § 405(g).

Plaintiff moves the Court to reverse the Commissioner's decision denying her social security benefits, or in the alternative, to remand this matter for further proceedings consistent with the Court's decision. (ECF Nos. 10, 11.) As the basis for such relief, Plaintiff argues that: (1) the Administrative Law Judge ("ALJ") erred at step two in not finding Plaintiff's "intermittent explosive disorder, bipolar disorder, major depressive disorder, panic disorder, and posttraumatic stress disorder" to be severe impairments (ECF No. 11, at 13, 15-18); and (2) the ALJ's residual

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

functional capacity ("RFC") finding did not adequately account for Plaintiff's "difficult[ies] with prolonged sitting," "need to lie down throughout the workday," "significant issues with social interactions," and times in which Plaintiff would be off-task or absent due to her symptoms (ECF No. 11, at 13, 18-23).

In response, the Commissioner contends that substantial evidence supports the ALJ's fact-finding, both at step two and during the RFC assessment. (ECF No. 14, at 2, 13.) The Commissioner argues that the ALJ properly considered the entire record and incorporated appropriate limitations in the RFC determination, which found Plaintiff capable of "perform[ing] a range of sedentary work with enumerated postural, environmental, and mental limitations." (ECF No. 14, at 2.) The Commissioner moves the Court to grant his motion for summary judgment and affirm his final decision denying benefits. (ECF No. 14, at 24.)

For the reasons set forth below, the Court finds that the ALJ complied with applicable legal standards in considering Plaintiff's impairments and in conducting the RFC assessment. The Court also finds that substantial evidence supports the ALJ's findings. Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion to Remand (ECF Nos. 10, 11), GRANT the Commissioner's Motion for Summary Judgment with Brief in Support (ECF No. 14), and AFFIRM the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on September 19, 2022, alleging disability beginning December 9, 2021. (Administrative Record ("R.") at 100-01.)[2] In

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Memorandum Opinion. The Court will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

her application, Plaintiff alleged that she suffered from bipolar disorder, intermittent explosive disorder, anxiety, depression, hearing loss, polycystic ovary syndrome, obesity, degenerative disc disease, osteoarthritis, and chronic pain disorder. (R. at 101, 237.)

The SSA denied Plaintiff's claim initially on May 31, 2023, and again on reconsideration on January 25, 2024. (R. at 121-25, 127-30.) Plaintiff requested a hearing before an ALJ, and one was held on July 30, 2024. (R. at 53-71.)

On September 18, 2024, the ALJ issued a written decision, finding Plaintiff not disabled under the Social Security Act ("the Act") from the alleged onset date through her date last insured of December 31, 2023. (R. at 18-41.) On May 15, 2025, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-7.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current

work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the medical impairments meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ determines the claimant's residual functional capacity ("RFC"), which accounts for the most that the claimant can do despite his or her impairments. *Id.* § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(f). However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert. *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76

F.3d 585, 589 (4th Cir. 1996). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion. *Id.*

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original)); *see Craig*, 76 F.3d. at 589. The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)). If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

## III. THE ALJ'S DECISION

The ALJ found that Plaintiff met the insured status requirements of the Act through December 31, 2023. (R. at 24.) The ALJ then analyzed Plaintiff's disability claim under the five-step evaluation process. (R. at 21-36); *see* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634-35.

**A. Steps One Through Three**

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the relevant period. (R. at 24.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of degenerative disc disease of the spine, obesity, and an adjustment disorder. (R. at 24.) At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or medically equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 25.)

**B. Residual Functional Capacity Determination**

The ALJ then determined Plaintiff's RFC. (R. at 27-35.) Based on the record, the ALJ found that Plaintiff retained the ability to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with the following limitations:

> [Plaintiff] can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl and never climb ladders, ropes, or scaffolds. [Plaintiff] can tolerate no concentrated exposure to vibration and no exposure to hazards. She is limited to performing non-production rate work with no more than occasional public contact.

(R. at 27.)

*1. Plaintiff's Subjective Allegations*

In arriving at the RFC, the ALJ first summarized Plaintiff's subjective complaints. (R. at 27-28.) Plaintiff reported difficulty with a number of activities, including "standing, walking, lifting, climbing stairs, bending, squatting, balancing, [and] using her hands." (R. at 28.) Plaintiff also said that she struggled with "remembering, being around other people, and focusing." (R. at 28.) In addition, Plaintiff reported low back pain, "intermittent numbness, depression, angry episodes, and anxiety attacks." (R. at 28.)

Plaintiff said that she had "good days and bad days with her symptoms." (R. at 28.) She described her back pain as ranging from four or five out of ten to nine or ten out of ten in terms of

severity. (R. at 28.) She said that she took medications for pain which caused side effects, including diarrhea and drowsiness. (R. at 28.) Plaintiff said that she relied on her husband to help her with activities of daily living, including preparing meals and driving her around. (R. at 28.) However, Plaintiff also said that she retained some capacity to "manage her personal care and hygiene, live and spend time with her husband, watch television, take medications, go to medical appointments, [and] spend time with her pet dogs." (R. at 28.) In addition, she did some arts and crafts projects and displayed her projects at art shows. (R. at 28.)

*2. Treatment Records Regarding Plaintiff's Physical Impairments*

The ALJ then summarized Plaintiff's records. (R. at 28-31.) Regarding her physical impairments, in January 2022, Plaintiff saw J. Kim, M.D., an orthopedic spine surgeon, due to worsening back pain. (R. at 28.) Plaintiff said that "her pain was exacerbated by sitting, standing, exercising, walking, and driving." (R. at 28.) An examination found "lumbar spine tenderness, antalgic gait, positive straight leg raise test," and reduced strength. (R. at 28.) However, Plaintiff was not found to be in acute distress. (R. at 28.) Dr. Kim continued Plaintiff on gabapentin, ordered a magnetic resonance imaging ("MRI"), and made a referral to pain management. (R. at 28.) In January 2022, an MRI showed "severe central spinal canal stenosis exacerbated by superimposed central disc extrusion at [L3-L4], multilevel mild stenosis, minimal grade 1 retrolisthesis at L4-L5, and congenitally slender lumbar spinal canal, but no herniation or stenosis of the lower thoracic spine." (R. at 28.)

In October 2022, diagnostic imaging of the cervical spine showed "multilevel disc and facet degenerative changes with foraminal stenosis at C5-6 and C6-7 and minimal cord compression at C5-6, but no cord edema or cord signal abnormality." (R. at 29.) In December 2022, Plaintiff saw a spine and pain specialist, Z. Arboleda, N.P., for back pain that Plaintiff said

radiated into her arms and legs. (R. at 29.) Plaintiff experienced partial relief from treatments, including a TENS device, heat therapy, spinal injections, and pain medication. (R. at 29.) An examination showed "tenderness of the bilateral paracervicals, transverse process at C5 bilaterally, pain with extension of the cervical spine, C8 decreased sensation of the 4th and 5th digits, ulnar hand, and distal forearm on the right." (R. at 29.) However, Plaintiff was also found to be "oriented with normal cervical spine alignment and no atrophy, normal sensation in the left upper extremities, and negative Tinel's signs bilaterally." (R. at 29.) Plaintiff was told to continue taking gabapentin and baclofen and to reduce her diclofenac dosage to "only once a day as needed." (R. at 29.)

In June 2023, Plaintiff again saw Ms. Arboleda, the spine and pain specialist. (R. at 30.) Plaintiff said that "she continued to experience low back and cervical pain radiating into upper and lower extremities with numbness in the bilateral lower extremities with prolonged standing and ambulation." (R. at 30.) However, Plaintiff also said that her medications had provided some relief. (R. at 30.) Ms. Arboleda recommended an epidural steroid injection and told Plaintiff to continue taking baclofen and gabapentin as needed. (R. at 30.)

In July 2023, Plaintiff saw her primary care provider, A. Crugnale, M.D. (R. at 30.) Plaintiff reported not being in any pain following an injection she received two weeks earlier for lower back pain. (R. at 30.)

In August 2023, Plaintiff went to an emergency department due to back pain. (R. at 30.) She rated the pain as eight out of ten in terms of severity and said it was mostly on the right side and down her right leg. (R. at 30.) She said that she was not getting relief from her pain medication. (R. at 30.) An examination found that Plaintiff had "antalgic gait, right CVA tenderness, decreased active motion in her back secondary to pain, and positive straight leg raise

test." (R. at 30.) However, Plaintiff was also described as being "in no apparent distress" and as ambulating "with mild difficulty only." (R. at 30.) When Plaintiff was discharged, she was given medications for "lumbosacral degenerative disc disease and acute right sided low back pain with right sided sciatica." (R. at 30.) In August 2023, diagnostic imaging of Plaintiff's lumbar spine "was limited by body habitus and showed scoliosis with multilevel degenerative change, but no bony destructive legions or fractures." (R. at 30.)

In October 2023, M. Paine, M.D., a primary care provider, described Plaintiff as "stable overall." (R. at 31.) Around this time, Plaintiff also saw Ms. Arboleda, the spine and pain specialist, for continued pain management. (R. at 31.) An examination found that Plaintiff had "worsening pain with hyperextension and flexion of the cervical and lumbar spine, tenderness to palpation of the paracervicals, and limited range of motion to cervical flexion, extension, and rotation." (R. at 31.) However, Plaintiff also demonstrated "equal strength and sensation to the bilateral upper extremities." (R. at 31.) Ms. Arboleda switched Plaintiff from baclofen to methocarbamol, continued Plaintiff on gabapentin, and recommended home exercises. (R. at 31.)

*3. Treatment Records Regarding Plaintiff's Mental Impairments*

Regarding her mental impairments, in August 2022, Plaintiff saw J. Schmitt, M.D., for anxiety and to have medication refilled. (R. at 29.) On examination, Plaintiff had an appropriate mood and affect. (R. at 29.) In September 2022, Plaintiff saw M. Gomez, M.D. (R. at 29.) At this appointment, Plaintiff reported "irritability, rageful thoughts, and auditory hallucinations." (R. at 29.) She also said that she avoided crowds because she was hard of hearing. (R. at 29.) An examination found that Plaintiff was "anxious appearing with depressed mood." (R. at 29.) However, Plaintiff was also described as cooperative and alert, and she reported no suicidal

ideation or irritable mood since the month prior. (R. at 29.) Dr. Gomez prescribed medication to help with anxiety. (R. at 29.)

Over the course of 2023, Plaintiff reported improvement in her mental health symptoms, though she still experienced some difficulties. (R. at 29-31.) In January 2023, Plaintiff reported having an improved mood and being able to go out more with less anxiety. (R. at 29.) Although she still had anxiety attacks, she said they were more manageable. (R. at 29.) She reported that prescribed medication had helped. (R. at 29.) An examination found that she had a normal affect. (R. at 29.) Dr. Gomez continued Plaintiff on her prescribed medications. (R. at 29.) In March 2023, Plaintiff reported some anxiety, but also some improvement after taking her prescribed medications. (R. at 29.) On examination, she was again found to have a normal affect. (R. at 29.)

In April 2023, Plaintiff reported "recent suicidal ideation, crying spells, and increased stress due to her physical impairments." (R. at 29.) She said that she was isolated at home, though she received support from her spouse and friends. (R. at 29.) An examination found that Plaintiff was "anxious appearing with depressed mood and sad and tearful affect, but was alert, oriented, and cooperative." (R. at 29.) Dr. Gomez prescribed Wellbutrin, in addition to continuing Plaintiff on prior medication. (R. at 29-30.)

At a follow-up appointment with Dr. Gomez, Plaintiff said that her mood had improved, she felt more motivated, and she was experiencing less anxiety. (R. at 30.) She was able to leave her room, finish small craft projects, and show her pieces at craft shows. (R. at 30.) In addition, Plaintiff reported being able to "independently" perform activities of daily living. (R. at 30.) On examination, she was "alert, oriented, and well dressed and groomed with normal speech." (R. at 30.) Dr. Gomez continued Plaintiff on her prescribed medications. (R. at 30.)

In July 2023, Dr. Crugnale found that Plaintiff's "mental health symptoms were currently well controlled under medical management and psychological care with her psychiatrist." (R. at 30.) A few months later, in September 2023, Plaintiff "reported some increased stressors with her living situation." (R. at 31.) Despite these stressors, Dr. Gomez described Plaintiff as "alert and oriented with intact cognitive function, good eye contact, [and] normal thought process and content." (R. at 31.)

In November 2023, Plaintiff said that her mood had improved. (R. at 31.) She said that she now had a cleaner household and that she had lost weight by taking prescription medication and decreasing her caloric intake. (R. at 31.) She also said that her two pet Chihuahuas provided emotional support. (R. at 31.) On examination, Plaintiff was "alert, oriented, [and] cooperative." (R. at 31.) Dr. Gomez continued Plaintiff on her prescribed medications. (R. at 31.)

*4. Medical Opinion Evidence and Prior Administrative Findings*

The ALJ then summarized the medical opinion evidence and prior administrative findings. (R. at 31-35.) In January 2023, Dr. Gomez opined that Plaintiff had "moderate to extreme limitations to her abilities to sustain concentration and persistence, interact with others, and adapt or manage herself." (R. at 31.) The ALJ found this opinion not entirely supported by Dr. Gomez's examination findings and not consistent with the record, and therefore, unpersuasive. (R. at 31.) The ALJ acknowledged that providers described Plaintiff as "anxious appearing [with] depressed mood and sad or tearful affect" and that Plaintiff "reported increased symptoms with stressors." (R. at 31.) However, the ALJ also noted that Plaintiff was still "generally described as alert, oriented, cooperative, pleasant, appropriately dressed and groomed, and in no acute distress with intact memory, intact attention and concentration, adequate insight and judgment, good eye contact, normal speech, and normal thought content and process." (R. at 31.)

In May 2023, Plaintiff saw A. Capps, N.P., for a medical consultative examination. (R. at 32.) Ms. Capps found Plaintiff "limited to light work with additional limitations to standing for four hours and walking for two hours in an eight-hour workday" and "occasionally bending, stooping, kneeling, and squatting." (R. at 32.) The ALJ did not find this opinion persuasive because it too was not entirely supported by Ms. Capps' examination of Plaintiff and not entirely consistent with the record. (R. at 32.) Instead, the ALJ determined that the record, including Plaintiff's reports of radiating back and neck pain, her obesity, and numbness in arms and legs, supported "additional limitations to sedentary work plus postural and environmental limitations." (R. at 32.)

Plaintiff also saw K. Russell, Psy.D., for a psychological consultative examination. (R. at 32.) Plaintiff "reported a history of anxiety and depression and that she believed she had been diagnosed with bipolar disorder." (R. at 32.) This included "a remote history of one psychiatric hold for a suicide attempt, but no return visit history to a psychiatric facility." (R. at 32.) Dr. Russell found that Plaintiff could "maintain regular attendance but may have difficulties maintaining attendance *due to her physical health*." (R. at 32 (emphasis added).) Dr. Russell further determined that Plaintiff's "presentation was consistent with a diagnosis of adjustment disorder with depression and anxiety." (R. at 32-33.) In addition, Dr. Russell opined that Plaintiff "should be able to perform complex tasks without high levels of supervision if she could work in a situation that allowed rest breaks." (R. at 33.) The ALJ found Dr. Russell's opinion "not persuasive because it is not entirely supported by her examination of [Plaintiff] and is not entirely consistent with the record." (R. at 33.) The ALJ concluded that the record "supports [Plaintiff's] ability to perform non-production rate work with no more than occasional public contact due to symptoms including anxiety, depressed mood, panic attacks, and low motivation." (R. at 33.)

However, the ALJ found that the record "does not support additional attendance limitations." (R. at 33.) Although Plaintiff sometimes appeared at appointments as anxious, depressed, or sad and reported increased symptoms with stressors, her mental examinations otherwise contained normal findings. (R. at 33.)

A DDS psychology consultant also assessed Plaintiff's functional capacity. (R. at 33.) The initial level DDS psychology consultant determined that Plaintiff had only mild limitations. (R. at 33.) The ALJ found this opinion unpersuasive "because it is not entirely supported by the DDS psychology consultant's summary of the evidence and is not generally consistent with the record." (R. at 33.) Specifically, the ALJ found that the record "supports the [Plaintiff's] limitations to non-production rate work with no more than occasional public contact due to symptoms including anxiety, depressed mood, panic attacks, and low motivation." (R. at 33.)

In addition, a DDS medical consultant assessed Plaintiff's functional capacity. (R. at 33.) The initial level DDS medical consultant found the following:

> [Plaintiff] had the functional capacity to perform sedentary work with additional limitations to frequently climbing ramps and stairs; occasionally stooping, kneeling, crouching, and crawling; never climbing ladders, ropes, or scaffolds; must be able to avoid concentrated exposure to vibration; and must be able to avoid all exposure to hazards.

(R. at 33.) At the reconsideration level, the DDS medical consultant made similar findings. (R. at 33.) The ALJ found these opinions persuasive "because they are generally supported by their summaries of the evidence and are generally consistent with the record." (R. at 33.) The ALJ determined that the "record supports similar limitations to sedentary work," although he found additional postural and environmental limitations warranted. (R. at 33.)

In January 2024, a reconsideration level DDS psychology consultant assessed Plaintiff's functional capacity. (R. at 34.) This consultant found that Plaintiff "had moderate limitations to

[her] abilities to interact with others and concentrate, persist, or maintain pace due to depression and anxiety, but that [she] was able to perform simple, routine tasks with additional limitations to her ability to interact with the public." (R. at 34.) The ALJ found this opinion persuasive "because it is somewhat supported by the DDS psychology consultant's summary of the evidence and is somewhat consistent with the record." (R. at 34.) The ALJ determined that the "record supports similar limitations to non-production rate work with no more than occasional public contact." (R. at 34.) However, the ALJ found that the record "does not support additional limitations to performing simple, routine tasks." (R. at 34.)

The ALJ summarized his findings as follows: "While the record supports some of the limitations that [Plaintiff] has alleged due to degenerative disc disease, obesity, and an adjustment disorder, it does not support the severity of those limitations." (R. at 34.) The ALJ found that Plaintiff's "severe impairments were generally treated conservatively," including with medications, epidural steroid injections, and home exercises. (R. at 34.) The ALJ noted that Plaintiff did not have a recent history of inpatient psychiatric treatment, and "her mental health impairments were managed conservatively." (R. at 34.) The ALJ also noted that both Plaintiff and her providers reported improvement with treatment. (R. at 34.) In addition, the ALJ noted that providers generally described Plaintiff as alert, oriented, and in no acute distress. (R. at 34.) Finally, the ALJ noted that Plaintiff reported "retain[ing] some capacity to manage her personal care and hygiene, live and spend time with her husband, watch television, take medications, go to medical appointments, spend time with her pet dogs, and create some arts and crafts projects which she showed at art shows." (R. at 34.) For these reasons, the ALJ found that the "record does not support the severity of limitations alleged." (R. at 34.)

### C. Steps Four and Five

At step four, the ALJ concluded that Plaintiff had no past relevant work. (R. at 35.) At step five, the ALJ concluded that, through the date last insured, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, considering her age, education, work experience, and RFC. (R. at 35.) After considering the vocational expert's testimony, the ALJ identified the following representative occupations: circuit board inspector, inspector, and weight tester. (R. at 35.) Therefore, the ALJ found Plaintiff not disabled from the alleged onset date through her date last insured of December 31, 2023. (R. at 36.)

## IV. ANALYSIS

Plaintiff argues that the ALJ erred by not properly evaluating Plaintiff's "intermittent explosive disorder, bipolar disorder, major depressive disorder, panic disorder, or posttraumatic stress disorder" at step two (ECF No. 11, at 15-18) and by failing to adequately account for Plaintiff's limitations in the RFC finding and corresponding hypothetical posed to the vocational expert (ECF No. 11, at 18-23). The Court addresses each argument below and finds no reversible error.

### A. Substantial Evidence Supports the ALJ's Evaluation of Plaintiff's Mental Impairments

Plaintiff first argues that the ALJ erred by finding her adjustment disorder to be the only severe mental impairment and failing to discuss her "intermittent explosive disorder, bipolar disorder, major depressive disorder, panic disorder, or posttraumatic stress disorder" diagnoses at step two of the sequential evaluation process. (ECF No. 11, at 15.) Plaintiff contends that the ALJ should have found each of these conditions to be severe impairments at step two and should have included additional limitations in the RFC finding to account for Plaintiff's mental health symptoms. (ECF No. 11, at 15, 17.) Defendant responds that the ALJ considered all of Plaintiff's

medically determinable impairments, severe and not severe, in conducting the RFC assessment. (ECF No. 14, at 15.) Therefore, according to Defendant, any potential error in finding Plaintiff's other mental conditions not severe is "immaterial" because the "ALJ continue[d] the sequential process and consider[ed] the effects of all impairments in determining the RFC and [Plaintiff's] overall limitations and abilities." (ECF No. 14, at 14.) Because the ALJ identified several severe impairments at step two and then continued with the sequential evaluation process during which he considered all of Plaintiff's impairments, severe and not severe, the Court finds no reversible error.

"An ALJ's incorrect characterization of a severe impairment as 'non-severe' or failure to address a medically determinable impairment at step two does not automatically require remand." *Woodson v. Berryhill*, No. 3:17-CV-347, 2018 WL 4659449, at *4 (E.D. Va. Aug. 7, 2018), *report and recommendation adopted*, No. 3:17-CV-347, 2018 WL 4658681 (E.D. Va. Sept. 27, 2018). Even if the ALJ omits discussion of an impairment at step two, there is no reversible error if the ALJ considered the impairment in subsequent steps. *Id.* ("[C]ourts will find no reversible error — or treat the error as harmless — provided that the ALJ considered all of the claimant's impairments in the sequential analysis. . . . While the Fourth Circuit has not addressed the precise issue, district courts in this Circuit have adopted the view that an ALJ does not commit reversible error by omitting an impairment at step two, so long as the ALJ considers the impairment in subsequent steps." (citations omitted)).

Plaintiff acknowledges "that an error at step two of the sequential analysis may be cured if the ALJ's RFC finding correctly reflects all the claimant's limitations, regardless of whether the limitations result from severe or non-severe impairments." (ECF No. 11, at 17.) She, however, argues that "the step two error is not cured here, as the ALJ fail[ed] to include limitations in his

RFC finding that sufficiently account for [Plaintiff's] mental health symptoms." (ECF No. 11, at 17.) The Court finds otherwise.

Although the ALJ did not expressly discuss Plaintiff's "intermittent explosive disorder, bipolar disorder, major depressive disorder, panic disorder, or posttraumatic stress disorder" at step two, he "considered all of [Plaintiff's] medically determinable impairments, including those that are not severe," when crafting the RFC, and substantial evidence supports the ALJ's RFC determination. (R. at 24.) Specifically, the ALJ acknowledged Plaintiff's subjective allegations that she could not get along with others; experienced depression, anxiety attacks, and angry episodes; and had bad days with symptom exacerbation. (R. at 28; *see also* R. at 61-65.) The ALJ, however, found that the record did not support the severity of limitations alleged by Plaintiff. (R. at 34.) In doing so, he identified several reasons supporting his conclusion.

First, the ALJ considered Plaintiff's treatment history and statements to providers regarding her mental health impairments. (R. at 29-31.) On occasion, Plaintiff reported "irritability, rageful thoughts, and auditory hallucinations;" "recent suicidal ideation, crying spells, and increased stress due to her physical impairments;" and presented as "anxious appearing with depressed mood and sad and tearful affect." (R. at 29; *see, e.g.*, R. at 2053, 2058, 2066.) But even on those occasions, mental status findings on examination were otherwise normal, and Plaintiff reported improvement in her symptoms following medication adjustment. (R. at 29; *see, e.g.*, R. at 2051-53, 2057-58, 2064-66.) On other occasions, Plaintiff presented for medication management, generally reported improvement in symptoms, mood, and motivation, and stated that she could go out more, interact with the public, and perform her activities of daily living independently. (R. at 29-31; *see, e.g.*, R. at 2051 (stating that she "feels she is going forward" and "is in a good mood"), 2057 (reporting that her mood and motivation had improved, that she is

"better able to handle stressors," is "less prone to anxiety," and can complete activities of daily living on her own and can show her art work at craft shows), 2060 (describing Plaintiff as "managed and following treatment"); 2062 (stating that Plaintiff "is doing better in her mood," "has been coming out more and less anxiety," and is "more involved in household chores"), 2064 (stating that she has "better control of anger bouts").) The ALJ concluded that "her mental health impairments were managed conservatively" and that both Plaintiff and her providers reported improvement with treatment." (R. at 34.)

Second, the ALJ considered Plaintiff's reported activities. Plaintiff told her providers that, with medication management, her symptoms had improved to the point where she felt more in control of her symptoms and could go out in public. (R. at 34; *see* R. at 2057, 2062.) She reported being able to complete her activities of daily living independently and could exhibit her arts and crafts projects at art shows. (R. at 30, 34, 2057.) The ALJ found that the record, including her reported activities, supported her "ability to perform non-production rate work with no more than occasional public contact due to symptoms including anxiety, depressed mood, panic attacks, and low motivation," without the need for any additional mental limitations. (R. at 33, 34.)

Third, the ALJ also considered medical opinion evidence and prior administrative findings. (R. at 31-35.) Dr. Gomez found that Plaintiff had "moderate to extreme limitations to her abilities to sustain concentration and persistence, interact with others, and adapt or manage herself;" however, the ALJ found this opinion unpersuasive and too restrictive. (R. at 31; *see* R. at 980-82.) Dr. Russell concluded that Plaintiff may have attendance issues due to her *physical* health issues, but the ALJ found that the record did not support attendance limitations. (R. at 32-33; *see* R. at 1993.) At the initial level, a DDS psychology consultant concluded that Plaintiff had no more than mild limitations due to non-severe mental impairments. (R. at 33; *see* R. at 92-93.) The ALJ found

this opinion unpersuasive because the record supported the need for some limitations considering Plaintiff's mental impairments and resulting symptoms. (R. at 33.) Finally, on reconsideration, a DDS psychology consultant opined that Plaintiff "had moderate limitations to [her] abilities to interact with others and concentrate, persist, or maintain pace due to depression and anxiety, but that [she] was able to perform simple, routine tasks with additional limitations to her ability to interact with the public." (R. at 34; *see* R. at 111-12.) The ALJ found this opinion persuasive. (R. at 34.) In evaluating these differing opinions, the ALJ acknowledged that Plaintiff, at times, appeared at appointments as anxious, depressed, and/or tearful, but emphasized the otherwise normal mental examination findings and reports of symptom improvement and control with medication management. (R. at 31, 33, 34.) The ALJ concluded that the record "supports the [Plaintiff's] ability to perform non-production rate work with no more than occasional public contact due to symptoms including anxiety, depressed mood, panic attacks, and low motivation." (R. at 33.)

Plaintiff challenges the ALJ's evaluation of Dr. Gomez's opinion. (ECF No. 11, at 20-23.) Specifically, she contends that the ALJ erred in finding Dr. Gomez's opinion inconsistent with the record and failed to adequately explain his reasoning for finding Dr. Gomez's opinion unpersuasive. (ECF No. 11, at 21.) The Court, however, concludes that the ALJ complied with applicable legal standards in evaluating Dr. Gomez's opinion[3] and supported his analysis with substantial evidence from the record.

---

[3] Under applicable regulations, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources without deferring or giving any specific evidentiary weight to any medical source. 20 C.F.R. § 404.1520c(a). Specifically, the ALJ must articulate the "persuasiveness" of all medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the medical opinion[,]" including familiarity with the other evidence or understanding of disability program policies and

The ALJ explained that Dr. Gomez's opinion is "not entirely supported" by his own examination of Plaintiff and is "not consistent with the record." (R. at 31.) In addition, the ALJ cited substantial evidence to support his conclusion. For example, although the ALJ acknowledged that Plaintiff was at times described as "anxious appearing [with] depressed mood and sad or tearful affect," Plaintiff also "was generally described as alert, oriented, cooperative, pleasant, appropriately dressed and groomed, and in no acute distress." (R. at 31.) The ALJ also noted that Plaintiff was found to have "intact memory, intact attention and concentration, adequate insight and judgment, good eye contact, normal speech, and normal thought content and processes." (R. at 31.) In addition, as previously discussed, Plaintiff often reported improvements in her symptoms with medication, including improved mood, improved motivation, and the ability to go out in public (for example, to show her arts and crafts projects at craft shows). Thus, the ALJ found that Plaintiff's symptoms, including her anxiety, depressed mood, panic attacks, and low motivation, limited her to non-production work and no more than occasional interaction with the public. Substantial evidence supports this finding.[4]

---

requirements. *Id.* § 404.1520c(c). Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered. *Id.* § 404.1520c(b)(2). Supportability looks to whether the "supporting explanations presented by a medical source . . . support his or her medical opinion(s) or prior administrative medical finding(s)," and consistency looks to whether the medical opinion or prior administrative medical finding is consistent with other record evidence. *Id.* § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. *Id.* § 404.1520c(b)(2).

[4] To the extent that Plaintiff argues that the ALJ ignored mental status examination findings, that is incorrect. (ECF No. 11, at 21.) In fact, the ALJ discussed Plaintiff's mental health examination findings throughout his opinion. (R. at 24-36.) Among other examples, the ALJ noted that, in April 2023, Plaintiff "reported recent suicidal ideation, crying spells, and increased stress due to her physical impairments." (R. at 29.) The ALJ also repeatedly noted that Plaintiff received treatment for her mental health impairments and symptoms. (R. at 26-34.)

Plaintiff also points out that she "went to the emergency department on at least three occasions for severe anxiety" in May 2022, complaining about chest pain, high blood pressure, and shortness of breath. (ECF No. 11, at 21 (citing R. at 1095-110).) While the ALJ did not explicitly discuss these emergency department visits, he acknowledged Plaintiff's anxiety, panic

In sum, the ALJ's consideration of all of Plaintiff's mental impairments, severe and not severe, at subsequent steps of the sequential evaluation renders any error in the step two analysis harmless. Moreover, considering the medical record, Plaintiff's statements to treatment providers, Plaintiff's reported activities, and the medical opinion evidence and prior administrative findings, the ALJ reasonably found that the "record does not support the severity of [mental] limitations alleged" by Plaintiff and that Plaintiff could "perform non-production rate work with no more than occasional public contact due to symptoms including anxiety, depressed mood, panic attacks, and low motivation." (R. at 33.) Substantial evidence supports the ALJ's determination.

## B. <u>The ALJ Applied Correct Legal Standards in Conducting the RFC Assessment, and Substantial Evidence Supports the ALJ's RFC Finding</u>

Plaintiff next argues that the ALJ's RFC determination and the corresponding hypothetical presented to the vocational expert failed to "adequately account" for Plaintiff's limitations "with prolonged sitting, her need to lie down throughout the workday due to pain, her limitations in performing semi-skilled or skilled work and interacting with others in the workplace, and time off task and absenteeism . . . ." (ECF No. 11, at 18-19.) Specifically, she contends that the ALJ should have adopted greater limitations considering her subjective complaints and Dr. Gomez's opinion. (ECF No. 11, at 18-23.) In response, the Commissioner argues that the ALJ considered Plaintiff's subjective complaints, Dr. Gomez's opinion, and "the record as a whole when finding that Plaintiff's impairments did not preclude her from performing a range of sedentary unskilled work with other enumerated limitations." (ECF No. 14, at 17.) Because the ALJ applied correct legal

---

attacks, and other symptoms of mental impairments throughout his decision. (R. at 24-36.) Indeed, the ALJ specifically stated that his RFC finding accounted for Plaintiff's "symptoms including anxiety, depressed mood, panic attacks, and low motivation." (R. at 31.) Thus, while Plaintiff identifies portions of the record the ALJ did not explicitly address, there is no requirement that the ALJ specifically refer to every piece of evidence in his decision. *See Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019) (citing *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014)).

standards in conducting the RFC assessment and substantial evidence supports the ALJ's RFC finding, the Court finds no error.

Here, after considering the entire record, including Plaintiff's subjective allegations, medical history and treatment records, reports to providers, and activities of daily living, the ALJ found Plaintiff capable of performing sedentary work with postural and environmental limitations and a limitation to non-production rate work and no more than occasional public contact. (R. at 27-35.) The ALJ considered Plaintiff's subjective reports, including her complaints about intermittent numbness and back pain ranging from a four or five out of ten on good days and nine or ten out of ten on bad days. (R. at 28; *see* R. at 58-59.) The ALJ also acknowledged Plaintiff's allegations that her symptoms limited her ability to stand, walk, lift, climb, bend, squat, balance, and use her hands. (R. at 28; *see* R. at 65-67.) Further, the ALJ discussed Plaintiff's reported activities, including her ability to manage her personal care, spend time with her husband, take medications and attend medical appointments, and complete arts and crafts projects which she displayed to the public. (R. at 28; *see* R. at 57, 66-67, 2057.) The ALJ then summarized Plaintiff's records, acknowledging clinical and examination findings, as well as reports to providers. (R. at 28-31.) Plaintiff generally reported that her treatment provided partial relief, although she still experienced some symptoms. (R. at 29, 30.)

The ALJ also evaluated the medical opinion evidence and prior administrative findings. (R. at 31-35.) In addition to the previously discussed opinions pertaining to her mental impairments, the ALJ considered Ms. Capps' opinion, limiting Plaintiff "to light work with additional limitations to standing for four hours and walking for two hours in an eight-hour workday" and "occasionally bending, stooping, kneeling, and squatting." (R. at 32; *see* R. at 1982-88.) In finding this opinion unpersuasive, the ALJ determined that the record, including Plaintiff's

reports of radiating back and neck pain, her obesity, and numbness in arms and legs, "supports additional limitations to sedentary work, with additional postural and environmental limitations." (R. at 32.) DDS medical consultants, both initially and on reconsideration, limited Plaintiff to sedentary work with postural and environmental limitations. (R. at 33; *see* R. at 96-97, 109-11.) The ALJ found these opinions persuasive, adopting a similar RFC with additional mental limitations regarding non-production work and occasional interaction with the public. (R. at 33.)

After considering the record, the ALJ concluded that "[w]hile the record supports some of the limitations that [Plaintiff] has alleged. . . , it does not support the severity of those limitations." (R. at 34.) The ALJ explained that given the conservative treatment received by Plaintiff, including medications, epidural steroid injections, and home exercises; Plaintiff's reports of improvement and partial relief with treatment; and Plaintiff's reported activities, the record supported Plaintiff's ability to perform sedentary work with additional limitations. (R. at 34.) The RFC determination finds substantial support in the evidence, and Plaintiff's attempts to challenge it fail.

Plaintiff first argues that the ALJ failed to adequately account for her limitations with prolonged sitting and her need to lie down throughout the workday due to pain. (ECF No. 11, at 19-20.) She points to her testimony about being able to sit for only five minutes at a time, sitting exacerbating her back pain, and needing to lie in bed most of the day. (ECF No. 11, at 19.) Plaintiff further argues that the ALJ failed to account for objective evidence regarding Plaintiff's degenerative disc disease and back pain, arguing that the record is "replete with positive objective findings." (ECF No. 11, at 19.) Contrary to Plaintiff's argument, however, the ALJ discussed such evidence throughout his opinion. For example, the ALJ acknowledged Plaintiff's reports that "her pain was exacerbated by sitting" and generally cited to her hearing testimony after summarizing the same. (R. at 28.) As another example, the ALJ noted that Plaintiff

"demonstrated lumbar spine tenderness, antalgic gait, positive straight leg raise test," and reduced strength. (R. at 28.) The ALJ also noted that imaging showed degenerative changes. (R. at 29.) Because the ALJ considered such evidence in fashioning an appropriate RFC, Plaintiff's argument amounts to a request that the Court reweigh evidence already considered by the ALJ, which the Court cannot do. *See Hancock*, 667 F.3d at 472.

Plaintiff next argues that the ALJ erred by not adopting limitations consistent with Dr. Gomez's opinion regarding Plaintiff's mental limitations. (ECF No. 11, at 21.) Specifically, Plaintiff contends that the ALJ should have limited Plaintiff to unskilled work, incorporated additional limitations in interactions with others, and accounted for time Plaintiff would be absent or off-task. (ECF No. 11, at 21.) Each contention fails.

As an initial matter, and as found above, the ALJ's evaluation of Dr. Gomez's opinion comported with applicable legal standards, and the ALJ adequately explained why he found Plaintiff capable of non-production work without further limitations to simple, routine, and repetitive tasks. *See supra* Part IV.A. On the one hand, the ALJ acknowledged that Plaintiff has moderate limitations with respect to concentrating, persisting, or maintaining pace. (R. at 26.) On the other hand, the ALJ noted that Plaintiff said that she is "able to watch television, manage funds, and handle her own medical care." (R. at 26.) Plaintiff also reported being able to complete activities of daily living on her own. (R. at 30, 2057.) In addition, providers generally described Plaintiff's attention and concentration as intact. (R. at 26, 34.) Accordingly, the ALJ sufficiently supported his decision to limit Plaintiff to "non-production rate work," rather than impose additional limitations. (R. at 26-27.)[5]

---

[5] Plaintiff also appears to challenge any finding that she could perform skilled or semi-skilled work. (ECF No. 11, at 18-19.) The ALJ, however, ultimately listed *unskilled* jobs as representative

Plaintiff next argues that the ALJ failed to adequately account for Plaintiff's issues with interacting appropriately with others. (ECF No. 11, at 22.) The ALJ found Plaintiff capable of "no more than occasional public contact," with no specified limitations on her contact with coworkers or supervisors. (R. at 27.) Plaintiff argues that this is insufficient given her "social anxiety and her intermittent explosive disorder, which causes her to have verbal and physical outbursts." (ECF No. 11, at 22.) Plaintiff states that there have been "incidents of significant confrontation with others . . . with whom she was verbally and physically aggressive." (ECF No. 11, at 22.) Plaintiff testified that her anger can be triggered by "any little thing." (ECF No. 11, at 22; R. at 63.) Substantial evidence, however, supports the ALJ's consideration of Plaintiff's issues with interacting with others. The ALJ acknowledged that Plaintiff had moderate limitations with respect to interacting with others. (R. at 26.) However, the ALJ also highlighted evidence that indicated that Plaintiff retained some ability to interact with others. (R. at 26.) For example, Plaintiff reported that she could "spend time with friends and family and live with others." (R. at 26.) In addition, providers described Plaintiff as "pleasant and cooperative." (R. at 26.) Plaintiff also reported an ability to show her artwork and crafts at public shows. (R. at 34.) Finally, the DDS psychology consultant on reconsideration found Plaintiff moderately limited in her ability to interact appropriately with the general public but concluded that she retained the "ability to ask simple questions, accept instructions, get along with coworkers, and maintain socially appropriate behavior." (R. at 112.) The ALJ found this opinion persuasive. (R. at 34.) Accordingly, substantial evidence supports the ALJ's decision to find Plaintiff capable of "occasional public contact." (R. at 27.)

---

occupations identified by the vocational expert. (R. at 35, 68.) Therefore, any purported error in failing to limit Plaintiff to unskilled work would be harmless.

Finally, Plaintiff argues that the ALJ failed to account for Plaintiff's time off task and absenteeism. (ECF No. 11, at 22.) The ALJ, however, expressly considered the question of absenteeism and determined that the record did not support attendance limitations. (R. at 33.) To the extent Plaintiff takes another view of the evidence, the Court again may not reweigh the evidence already considered by the ALJ, and substantial evidence supports the ALJ's findings here. *See Hancock*, 667 F.3d at 472.

## V. CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF Nos. 10), GRANT the Commissioner's Motion for Summary Judgment with Brief in Support (ECF No. 14), and AFFIRM the final decision of the Commissioner. An appropriate Order will accompany this Memorandum Opinion.

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia Date:
September 25, 2026